**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**                        August 31, 2010

**LETTER OPINION**

Re:   **B.A.W. v. East Orange Board of Education**
      **Civil Action No. 10-4039 (JLL)**

Dear Counsel:

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Plaintiff, B.A.W., seeks a preliminary injunction against the East Orange Board of Education ("Defendant" or the "Board") requiring Defendant to maintain his educational placement at the Clearview School pending the outcome of the proceedings before this Court. This Court's jurisdiction is premised on 20 U.S.C. § 1415(i)(3)(A), 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiff's motion is **granted.**

**BACKGROUND**

Plaintiff, B.A.W., is nineteen years-old and has been classified as eligible for special education and related services. B.A.W. has been placed at the Clearview School, a private school approved by the New Jersey Department of Education to provide special education programs for public school students with disabilities, since September 2006. Defendant is the district board of education responsible for B.A.W.'s education.

On January 6, 2010, a team of educators and administrators from the Clearview School met with B.A.W. and his mother, R.Y.W., to develop an Individualized Education Plan ("IEP") for B.A.W. for the remainder of the 2009-2010 school year. During that meeting, Plaintiff's mother requested that B.A.W. be provided with services beyond June 2010. This request was discussed and ultimately rejected at the meeting. On February 16, 2010, the Board mailed a letter to B.A.W. providing, in pertinent part, that "[s]tudents with disabilities who meet the standards for graduation according to this section shall have the opportunity to participate in graduation exercises and related activities on a nondiscriminatory basis." (Santos Decl., Ex. E). In April 2010, B.A.W. sent a letter to the Board asking to continue to his education at the Clearview School for one more year and

asking for a follow-up IEP meeting to discuss said request. (Id., Ex. F). In May 2010, the Board responded to B.A.W.'s April 2010 letter, stating, in pertinent part, "[a]s you have met the standards for graduation, in accordance with N.J.A.C. 6A:14-4.11(e), your request for an additional year of schooling cannot be granted, as you will be graduating in June 2010." (Id.). B.A.W. sent a follow-up letter to the Board also in May 2010 wherein he renewed his request to remain at the Clearview School for an additional year, asked for a follow-up IEP meeting to discuss said request and advised the Board that "[t]o date, I have yet to receive a hard-copy of the [January] IEP." (Id., Ex. G). Several days later, the Board responded to B.A.W.'s May 2010 letter and stated the following:

> As you are aware, your request for an additional year of services from the Board was considered by the IEP Team at a meeting held on January 6, 2010. It was determined at that meeting that you have meet [sic] all of the District's requirements for graduation and will be graduating in June 2010. In addition and pursuant to State law, written notice of your graduation was provided to you in a letter dated February 16, 2010.

(Id., Ex. H). On May 20, 2010, B.A.W. submitted a letter to the New Jersey Department of Education, Office of Special Education Programs, stating that he had just received a denial letter from the Board regarding his request to remain at the Clearview School for an addition year, notifying the Department that, to date, he had not received a hard copy of the IEP generated at the January 2010 meeting, and requesting mediation regarding the foregoing issues. (Giles Cert., Ex. A). On May 26, 2010, the Department of Education submitted a letter to B.A.W. acknowledging receipt of his request for mediation and stating that "[w]hile mediation is continuing, New Jersey Administrate Code (N.J.A.C.) 6A:14-2.6(d)10 states that no change can be made to the student's classification, program, or placement unless both parties agree to the change." (Gilfillan Cert., Ex. A). On June 2, 2010, B.A.W. submitted a follow-up letter to the Department of Education clarifying his May 20, 2010 letter and requesting a due process hearing and "emergency relief." (Id., Ex. B). On June 7, 2010, B.A.W. submitted a "Parental Request for Mediation/Due Process Hearing/Expedited Due Process Hearing" form to the Department. (Gilfillan Cert., Ex. A). This form was stamped received by the Department's Office of Special Education on June 8, 2010. (Id.). On June 11, 2010, an attorney from the Children's Legal Resource Center sent a letter to defense counsel stating, in pertinent part:

> While not representing [B.A.W.] in this matter, B.A.W. and his mother have asked me to assist [him] by writing you, as East Orange's attorney, on their behalf. They wish me to confirm their position with regard to the Emergent Relief Hearing they have requested. Their position is that [B.A.W.'s] request for a the [sic] Due Process Hearing requires stay put of his current placement. As I'm sure you are aware, graduation is a change in placement that the parent/adult student can disagree with and achieve a stay put by the filing of due process until resolution of the dispute. Accordingly,

      East Orange may not graduate [B.A.W.] on June 17, 2010.

(Giles Cert., Ex D).

      The matter was then transferred to the State of New Jersey Office of Administrative Law for a hearing in connection with Plaintiff's request for due process and emergent relief. A hearing on Plaintiff's application for emergent relief was held before Administrative Law Judge Walter M. Braswell on June 16, 2010. An attorney from the Essex County Bar Association Volunteer Lawyers for Justice Program, Kaleia Edmundo, agreed to appear at the hearing on behalf of B.A.W. During the hearing, Ms. Edmundo argued that the IDEA's "stay-put" provision required the Board to maintain B.A.W.'s current placement pending a plenary hearing. On June 17, 2010, ALJ Braswell entered his decision on B.A.W.'s request, finding, in pertinent part, the following: (1) B.A.W. will suffer no harm, much less irreparable harm, if he were to graduate, (2) the legal right underlining B.A.W.'s claim is not well settled, (3) B.A.W. is not likely to succeed on the merits of the underlying claim inasmuch as he satisfied the requirements of graduation, (4) a balancing of the equities weighs in favor of the Board given that "it is unclear what, if any, harm would come to B.A.W. if he were to receive his diploma after having completed all educational requirements for graduation, and demonstrating a skill set necessary to successfully transition out of the school setting." (Giles Cert., Ex. E). As a result, ALJ Braswell denied B.A.W.'s request for emergent relief and dismissed, with prejudice, B.A.W.'s underlying request for due process. (Id.).

      B.A.W. was awarded a state-issued diploma on June 22, 2010. (Santos Cert., ¶ 17). B.A.W. did not attend his graduation ceremony. (Id.).

      On August 6, 2010, B.A.W. filed an appeal of ALJ Braswell's June 17, 2010 decision before this Court pursuant to 20 U.S.C. § 1415(i)(2).[1] In conjunction with said appeal, B.A.W. filed a

---

[1] Defendant challenges the fact that Plaintiff's Complaint has been verified by his mother, despite the fact that Plaintiff is now over the age of eighteen. Local Civil Rule 11.2 provides, in pertinent part:

> Except where otherwise provided by law, every petition shall be verified and, <u>whenever possible</u>, by the person on whose behalf it is presented. In case the same shall be verified by another, the affiant shall state in the affidavit the reasons such person does not make the verification and the affiant's authority for making it.

L. Civ. R. 11.2 (emphasis added). Plaintiff is a nineteen year-old individual with a learning disability whose "overall functioning is significantly below age and grade expectation." (Santos Cert., Ex. D). Plaintiff's mother certified that, as Plaintiff's legal guardian until the age of eighteen, she was actively involved in his education, both as a member of his IEP Team and as an advocate on his behalf. She further certifies that since Plaintiff turned eighteen, she has continued "at his behest to advocate on his behalf in regard to his education." See Verified Compl., "Verification." In light of

3

motion for a preliminary injunction seeking an order from this Court directing the Board to maintain Plaintiff's educational placement at the Clearview School until a final judgment is rendered in this action.

## LEGAL STANDARD

The Court of Appeals for the Third Circuit has recently restated the standards that this Court is bound to apply in administrative appeals under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The IDEA mandates that states, in order to receive federal financial support, "make available a free and appropriate public education to all children with disabilities residing within their borders." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 556 (3d Cir. 2010). The education provided under the IDEA must be constructed so as to meet a disabled child's unique needs and provide "significant learning," including a meaningful educational benefit in the least restrictive environment. D.S., 602 F.3d at 556 (internal quotation omitted). The individualized instruction is provided through an Individualized Education Plan ("IEP"). Id. Should the IEP provided by the state fail to supply the free and appropriate public education the IDEA guarantees, "the state must reimburse the child's parents" for private school costs incurred by the parents if a private school can meet the standard. Id. at 557.

The IDEA gives parents[2] the right to challenge the educational placement of their handicapped children through an administrative proceeding which New Jersey has implemented as a "due process hearing" before an administrative law judge ("ALJ"). Id. The due process hearing may be appealed to a state court or to a federal district court. Id. During these administrative and judicial proceedings, section 1415(j)[3] of the IDEA, known as the "stay put" rule, applies. See, e.g., Drinker v. Colonial Sch. Dist., 78 F.3d 859, 863-64 (3d Cir. 1996).

## DISCUSSION

Although Plaintiff's Verified Complaint serves as an appeal of ALJ Braswell's June 17, 2010 decision concerning Plaintiff's request for emergent relief and a due process hearing, currently before the Court is a motion for a preliminary injunction requiring Defendant to maintain Plaintiff's educational placement at the Clearview School pending this Court's ruling on the underlying appeal. Section 1415(j) of the IDEA, and its counterpart in the New Jersey Administrative Code, direct that a child remain in his or her current educational placement during the pendency of any administrative or judicial proceeding regarding a due process complaint. See 20 U.S.C. § 1415(j) ("[D]uring the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the

---

the foregoing, the Court will accept the verification submitted by B.A.W.'s mother, on his behalf.

[2] Parental rights transfer to the students when they reach the "age of majority under State law." 20 U.S.C. § 1415(m).

[3] Section 1415(j) of the Act was previously § 1415(e)(3).

4

then-current educational placement of the child") (emphasis added);[4] N.J.A.C. 6A:14-2.7(u).[5] "This requirement has come to be known as the IDEA's 'pendent placement' or 'stay put' provision." Susquenita Sch. Dist. v. Raelee S. By and Through Heidi S., 96 F.3d 78, 82 (3d Cir. 1996). The language of § 1415(j) is "unequivocal" inasmuch as it plainly states that "the child shall remain in the then current educational placement." Honig v. Doe, 484 U.S. 305, 323 (1988); Drinker, 78 F.3d at 864. Thus, § 1415(j) of the IDEA functions "in essence, as an automatic preliminary injunction." Drinker, 78 F.3d at 864.

Given its function as an "automatic preliminary injunction," where § 1415(j) is applicable, the Court need not apply the standard test for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. See Drinker, 78 F.3d at 864 ("Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief.").[6]

---

[4] Section 1415(j) provides, in relevant part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

[5] N.J.A.C. 6A:14-2.7(u) provides that:

> Pending the outcome of a due process hearing, including an expedited due process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program or placement unless both parties agree . . . .

[6] See also Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook County, Ill. v. Ill. State Bd. of Educ., 103 F.3d 545, 550 (7th Cir. 1996) ("If we were, in the instant case, to import these equitable factors into the stay-put provision, we would dilute the statutory framework. J.B. has been deemed eligible for assistance under the IDEA; the statute guarantees that he and his parents be able to rely on an uninterrupted education during a contest between the school board and the parents."); Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982) ("The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships."); Cronin v. Bd. of Educ. Of the East Ramapo Central Sch. Dist., 689 F. Supp. 197, 202 (S.D.N.Y. 1988) ("Due to this automatic preliminary injunction, it appears that a Court need not apply the standard test for an injunction pursuant to Rule 65, Fed. R. Civ. P., but can simply apply the language of the statute where it is applicable.").

The following key factors are undisputed: (1) graduation constitutes a change in educational placement,[7] (2) B.A.W. requested a due process hearing <u>prior</u> to his graduation,[8] and (3) the filing of a request for a due process hearing triggers the procedural safeguards set forth in § 1415 of the IDEA, including but not limited to the stay put provision.[9] 20 U.S.C. § 1415(j).

To the extent the Board argues that there was no change in placement because B.A.W. was not graduated until after there had been a final adjudication on the merits of B.A.W.'s claim (challenging the Board's decision to graduate him), the Court is unpersuaded. To date, B.A.W.'s claim has not been fully adjudicated. ALJ Braswell's decision clearly stated that it was "appealable by filing a complaint a bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the Untied States." (Giles Cert., Ex. E). Moreover, "Defendants' interpretation would render the stay-put provision meaningless because the school district could unilaterally graduate handicapped children." <u>Cronin</u>, 689 F. Supp. 197 n. 4.

Additionally, the Court notes that Congress made a clear policy choice in enacting § 1415(j): "that the danger of excluding a handicapped child entitled to an educational placement from that placement was much greater than the harm of allowing a child not entitled to an educational placement to remain in that placement during the pendency of judicial proceedings." <u>Cronin v. Bd. of Educ. of the East Ramapo Central Sch. Dist.</u>, 689 F. Supp. 197, 202 (S.D.N.Y. 1988). In this regard, the Third Circuit has confirmed that:

> [Section 1415(j)] represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved. Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief.

<u>Drinker</u>, 78 F.3d 864 (quotation omitted).

---

[7] <u>See, e .g.</u>, <u>Cronin</u>, 689 F. Supp. at 203; N.J.A.C. 6A:14-4.11(b).

[8] To the extent Defendant argues that B.A.W. failed to contest the proposed IEP which established a June 2010 graduation in a timely manner (that is, within "15 days of the IEP"), the Court notes that: (a) it is entirely unclear from the record when B.A.W. (and/or his mother) first received a copy of the January 2010 IEP, and (b) in any event, Defendant cites to no specific rule, section of the administrative code or other legal authority in support of this position. <u>See</u> Santos Cert., Ex. A (attaching <u>unsigned</u> copy of January 2010 IEP).

[9] <u>See</u> <u>Drinker</u>, 78 F.3d at 863-64.

  B.A.W.'s "current educational placement" at the point in time when he requested a due process hearing to challenge his graduation was that of a 12th grade student at the Clearview School participating in a curriculum developed and implemented by an IEP Team in January 2010.  See Santos Cert., Ex. A at 2 (listing 6/30/2010 as the "end date" for the January 2010 IEP); see generally Drinker, 78 F. 3d at 867 ("Because the term connotes preservation of the status quo, it refers to the operative placement actually functioning at the time the dispute first arises.  If an IEP has been implemented, then that program's placement will be the one subject to the stay put provision.").  The ultimate issue before this Court, as set forth in Plaintiff's Verified Complaint, is whether B.A.W. was properly graduated.  Until that issue is decided, B.A.W. is entitled to remain at the Clearview School in accordance with the procedural safeguard provided by the stay put provision.  See 20 U.S.C. § 1415(j); Cronin, 689 F. Supp. at 202 n. 4.

  In light of the foregoing, the Court concludes that B.A.W.'s removal from his program at the Clearview School during the pendency of the instant administrative and judicial proceedings violated the stay put provision of the IDEA, 20 U.S.C. § 1415(j).  B.A.W.'s motion for a preliminary injunction is, therefore, granted.  The East Orange Board of Education is hereby directed to immediately reinstate B.A.W. to the Clearview School during the pendency of these proceedings, unless school officials and B.A.W. agree on a satisfactory alternative arrangement, in accordance with 20 U.S.C. § 1415(j) ("[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child").

## **CONCLUSION**

  Based on the reasons set forth above, Plaintiff's motion for a preliminary injunction is granted.  An appropriate Order accompanies this Letter Opinion.

               /s/ Jose L. Linares
               Jose L. Linares
               United States District Judge